

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| ADR | *271 Cadman Plaza East* |
| F. #2025R00082 | *Brooklyn, New York 11201* |

June 9, 2025

<u>By ECF</u>

The Honorable Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:   United States v. Sharon Gohari
> <u>Criminal Docket No. 25-183 (AMD)</u>

Dear Judge Donnelly:

For the reasons below, and pursuant to Federal Rule of Criminal Procedure 16(d), the government respectfully requests that the Court enter the proposed Protective Order attached to this motion (the "Protective Order"). The Protective Order imposes restrictions on the use and dissemination of materials and information disclosed by the government to the defendant pursuant to the government's obligations under Rules 16 and 26.2 of the Federal Rules of Criminal Procedure, 18 U.S.C. § 3500, and pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). The defendant has consented to the Protective Order.

I.   <u>Background</u>

A.   <u>The Charged Conduct</u>

As alleged in the Complaint, ECF No. 1, and the Indictment, ECF No. 9, the defendant was charged with receiving and possessing child sexual abuse material. The defendant received and stored multiple videos on his phone depicting the rape of children as young as roughly five years old and, in response to the videos, stated his intention to seek out sex in a high school. The defendant is also the subject of an ongoing counterterrorism investigation involving a scheme to receive payment from Iranian nationals and others seeking to enter the United States illegally in exchange for arranging and facilitating their entry. *See* ECF No. 4 (Detention Memorandum).

B.   <u>The Discovery</u>

As part of its investigation, the government has obtained a substantial volume of evidence and records from numerous sources. Those sources include but are not limited to: voluntary interviews of non-parties; records obtained from electronic communications service

providers; searches of electronic devices; financial records and documentation; other personal and family records, including from non-parties and victims; and other materials. These broad categories of discovery will implicate a number of different interests that should be protected, including three in particular, as described below.

*First*, the government has a substantial national security interest in protecting the integrity of an ongoing counterterrorism investigation. The discovery includes non-public information relating to the use of sensitive non-public law enforcement investigative techniques, public disclosure of which could thwart their effectiveness in future counterterrorism and national security investigations. Public disclosure of the content of the government's discovery and the nature of its investigative techniques would allow bad actors to take steps to frustrate the government's ongoing investigation and future investigations of the type of conduct being investigated here.

*Second*, the discovery to be provided to the defendant includes materials relevant to the government's ongoing and continuing investigation into the conduct alleged in the Detention Memorandum. Were any uncharged individuals to obtain the government's discovery materials, they would be in a position to frustrate the continuing investigation by, for example, contacting or intimidating witnesses, destroying evidence, and/or fleeing from prosecution. Disclosure of the discovery materials in the absence of the Protective Order could therefore compromise the government's ability to continue to investigate additional serious illegal conduct implicating national security interests, and to arrest and prosecute additional responsible individuals.

*Third*, the government's discovery is anticipated to include information including non-public personal information of witnesses and victims, including minor victims. If the government's discovery is not protected by the Protective Order, those individuals and their families could become exposed to unnecessary and uninvited scrutiny and potential harassment. Disclosure in the absence of the Protective Order could therefore compromise the government's ability to secure assistance from witnesses of similar offenses in the future.

II.    Legal Standard

This Court has the authority under Federal Rule of Criminal Procedure 16(d) to issue a protective order restricting the dissemination of discovery for good cause. *See* Fed. R. Crim. P. 16(d)(1) ("At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."); *United States v. Al-Farekh*, 956 F.3d 99, 106-07 (2d Cir. 2020) (noting "district courts' power under [Rule 16(d)] to issue protective orders denying or restricting discovery for good cause"); *In re: Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 122 (2d Cir. 2008) (noting that Rule 16(d) grants district courts the discretion to establish conditions "under which the defense may obtain access to discoverable information"); *United States v. Smith*, 985 F. Supp. 2d 506, 521 (S.D.N.Y. 2013) (noting that "the Supreme Court has held that the trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of materials which they may be entitled to inspect"). "Good cause" as contemplated by Rule 16 includes the protection of information important to the national security, law enforcement and innocent third parties. *See, e.g., United States v. Aref*, 533 F.3d 72, 78 (2d Cir. 2008) (discussing national security interests); *Smith*, 985 F. Supp. 2d at 524, 531 (discussing third party and law enforcement interests); Fed. R. Crim. P. 16

advisory committee note (1974) ("Although the rule does not attempt to indicate when a protective order should be entered, it is obvious that one would be appropriate where there is reason to believe that a witness would be subject to physical or economic harm if his identity is revealed."); *see also* 18 U.S.C. § 3771(a)(1) ("A crime victim has . . . [t]he right to be reasonably protected from the accused.").

By its own terms, Rule 16 contemplates that discovery materials should be exchanged privately between the parties and not disclosed publicly. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31-33 (1984) (noting that pretrial civil discovery materials are not traditionally available to the public); *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) (holding the same in the context of criminal discovery); *Smith*, 985 F. Supp. 2d at 519 (noting that pretrial discovery "is usually conducted in private"). Because the purpose of pretrial discovery is solely to prepare a defense, discovery materials provided by one party or another should not be disseminated before trial to members of the public. *See Anderson*, 799 F.2d at 1441 ("Discovery, whether civil or criminal, is essentially a private process because the litigants and courts assume that the sole purpose of discovery is to assist trial preparation. That is why parties regularly agree, and courts often order, that discovery information will remain private."); *United States v. McVeigh*, 918 F. Supp. 1452, 1460 (W.D. Okla. 1996) (limitations on public disclosure of discovery information "assure the fairness of the proceedings" and "emphasize that trials are conducted inside the courtroom . . . rather than on the courthouse steps").

For these reasons, courts in this Circuit and others have held that it is appropriate to issue a protective order limiting the dissemination of discovery materials solely to the defendants for their use in preparing a defense for trial. *See, e.g.*, *Seattle Times Co.*, 467 U.S. at 37 (affirming protective order limiting dissemination of pretrial discovery); *United States v. Stewart*, 590 F.3d 93, 98-99 (2d Cir. 2009) (same); *Anderson*, 799 F.2d at 1441 (same); *Smith*, 985 F. Supp. 2d at 535 (same); *United States v. Salemme*, 978 F. Supp. 386, 389-90 (D. Mass. 1997) (same).

III.    The Proposed Protective Order

The proposed Protective Order (the "Protective Order") balances the varied privacy and security interests of the government and of uncharged third parties, including potential witnesses, against the defendant's need to investigate the charges against him and to prepare a defense, by restricting the disclosure of discovery to individuals with a specific need to review the discovery to assist the defendant in defending against the charges. The Protective Order permits defense counsel to share discovery materials with a range of designated persons, including defense staff, non-lawyer personnel, expert witnesses, litigation consultants, contractors, translators, and interpreters, and to seek additional designations as needed. The Protective Order also authorizes defense counsel to use and retain the materials, for the defendant's defense, throughout the pendency of this case and sentencing and appeals, if any, after which time the Protective Order requires the discovery materials to be returned to the government.

At the same time, the Protective Order requires defense counsel to ensure that the discovery materials are not disseminated beyond the respective defense teams, including any notes or other material derived from or prepared based upon the discovery materials. Furthermore, the defendant will be barred by the Protective Order from transmitting any of the discovery materials

outside of the United States.  In the event that this term of the Protective Order, or other terms, pose material difficulties to the defendant in preparing his defense of this case, nothing in the Protective Order precludes the defendant from seeking to negotiate an accommodation with the government, or seeking relief from the Court if the parties cannot reach an accommodation.

Finally, the Protective Order allows the government to designate particularly sensitive discovery material as "Sensitive Discovery Material," subject to greater restrictions on its use and dissemination, provided that the government has a good faith belief that such heightened protections are warranted.  Nothing in the Protective Order prevents the defendant himself from accessing these materials, so long as he does so in the presence of his counsel or his counsel's staff.  In the event the defendant or his counsel disagree with the government's designation of materials as "Sensitive Discovery Materials," the Protective Order encourages defense counsel to endeavor to resolve such a dispute with the government.  In the event the parties are unable to resolve such an issue, the Protective Order permits defense counsel to challenge "Sensitive Discovery Material" designation by filing a motion with the Court.

IV.    The Defendant Has Consented to the Proposed Protective Order

The government has provided a draft copy of the Protective Order to counsel for the defendant, who has consented to the entry of the Protective Order.  The enclosed draft reflects defense counsel's signature and the government's.

V.    Conclusion

Given the sensitive nature of the discovery in this case, the volume of discovery, and the potential harm to the government and to third parties and victims that would result from its disclosure to those without a legitimate need to review the discovery, the government respectfully requests that the Court enter the Protective Order.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:    /s/
       Andrew D. Reich
       Assistant U.S. Attorney
       (718) 254-6452

Enclosure (Proposed Protective Order)

cc:    Clerk of Court (AMD) (By ECF)
       Samuel Jacobson, Esq. (By ECF)

4